## BEAUREGARD v BEAUREGARD et

Ohio Appeals, 6th Dist, Lucas Co

Decided March 29, 1937

Alfred J. Croll, Toledo, for appellant.
Holloway, Peppers & Romanoff, Toledo, for appellees.

## OPINION

By OVERMYER, J.

This is an appeal on question of law. Ellen Bauregard, appellant, brought an action in Common Pleas Court against her son, Fred M. Beauregard for the recovery of damages for injuries suffered by her on June 24, 1932, while riding as a guest passenger in her son's automobile operated by him. Issue was joined, and after three abortive trials, the history of which it is not necessary to review, a fourth trial resulted in a verdict and judgment for plaintiff in the sum of $10,000. Thereupon a supplemental petition was filed in the action making the insurance company carrying liability on the son's automobile a party defendant. The insurance company defended the action, claiming that the assured had not given timely notice to the company regarding the accident, and the claims following it, and that the assured colluded with plaintiff in securing counsel for plaintiff and in preparing and prosecuting the action against himself and thereby breached the provisions of the policy requiring him to co-operate with the insurer.

On trial, the court, at the conclusion of all the evidence, directed a verdict in favor of the appellee, The Ocean Accident & Guarantee Corporation, Ltd., and later entered judgment thereon. From this judgment Ellen Beauregard appeals.

The assignments of error, five in number, relate to the admission and exclusion of evidence, the direction of the verdict, the overruling of plaintiff's motion for judgment notwithstanding the verdict, and the overruling of a motion for a new trial.

The appellant claims to have been injured on June 24, 1932, by being thrown off the rear seat of her son's automobile onto the floor of the car as the car was driven across the track of The Toledo & Ohio Central Railway where the railroad crosses Indiana Avenue in this county. The accident was not reported to the in-

594

surance company by the assured until July 15, twenty-one days after the accident, although assured, who was then living at home and a member of the mother's family, had called doctors to attend the mother. Counsel had been employed by someone in the family for the mother, to prepare and prosecute a claim against the assured. The appellant had been put to bed after a doctor had treated her on the day of the accident and remained in bed until July 23, when she was taken out for X-ray pictures. The son admitted having testified on a former trial that his mother was unconscious almost all the way home on the day of the accident; that she could hardly sit up; that she was moaning all the time; that he and another person had to help her into the house, and that he at once obtained a doctor for her. Yet, at the present trial his excuse for not notifying the insurance company as provided in the policy is that he did not think his mother was seriously injured.

The record in this case, consisting of some three hundred pages, contains a great deal of the testimony of the son on the former trials, where the mother was seeking a verdict against the son, and was brought into this record by cross-examination. An examination of this testimony and comparison of it with his other testimony in the present trial against the insurance company, discloses not even a poorly concealed, but an open effort on the part of the son to aid the plaintiff's recovery of a judgment herein, and further shows that perjury had been committed by him. In the first two trials he testified, and in signed statements to the insurance company he stated, that his rate of speed in approaching the crossing was between 40 and 50 miles per hour. He admits testifying in the third trial that he approached the crossing at a speed of 60 to 65 miles per hour, and in the record before us appears the following testimony given by him:

"Q. Your speed in fact was 40 to 50 miles per hour? A. That is right.

Q. And you knew that was your speed * * * at the time you testified in your third trial? A. Yes.

Q. And you knew it was not 60 to 65 miles an hour, didn't you? A. Yes.

Q. Both when you talked to Dr. Muenzer and at the time you testified in your third trial? A. That is right. * * *

Q. I say, any testimony that you were going 60 to 65 miles an hour would be false and untrue, wouldn't it? A. Yes.

Q. Because you knew differently from that? A. That is right."

The charges of negligence in the original and amended petitions on which former trials were had, all had to do with the speed of the automobile in approaching and going over the crossing, and the perjured testimony on this subject went to the crux of the case. As a result of the false testimony on this subject at the third trial, counsel for the insurance company withdrew from that trial and refused further to represent the assured, as they had been doing under a waiver of liability. In so withdrawing, they were fully justified. At the fourth trial, which resulted in a verdict for plaintiff, defendant was represented by other counsel employed by defendant.

The testimony given by assured above set forth stands undisputed in the record, and shows that instead of co-operating with the insurer as he was required to do by the terms of the policy, he was, by his own admissions, giving false testimony to assist his mother in securing a verdict against himself. We have before us in the record not only this instance, but other instances and circumstances showing an open effort at collusion, not only in securing counsel for plaintiff but in his testimony at the various trials between the plaintiff and her son as defendant, and a clear breach of the provisions of the policy. The trial court could not do other than direct a verdict and deny recovery on the evidence before it. Reasonable minds certainly could not differ on the question, after hearing or reading the evidence.

The claimed errors set forth by appellant touching the admission and rejection of evidence and other matters, evaporate into nothingness when there stands forth in the record a clear case of collusion, fraud and perjury, and they require no comment. If we were to extend this opinion, it would be only to set forth other facts and circumstances shown by the record sustaining our reasons for affirmance of the judgment below.

Judgment affirmed.

LLOYD and CARPENTER, JJ, concur.